IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DEBORAH A. DOOLEY, pro se,**

    **Plaintiff,**

**v.**              **//    CIVIL ACTION NO. 1:14CV2**
                                  **(Judge Keeley)**

**MATRIX ABSENCE MANAGEMENT, INC.,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**
**<u>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 36]</u>**

The defendant, Matrix Absence Management, Inc. ("Matrix"), has moved for summary judgment against the <u>pro se</u> plaintiff, Deborah A. Dooley ("Dooley"). For the reasons that follow, the Court **GRANTS** the motion.

### I. BACKGROUND

During her employment with Mylan Pharmaceuticals, Inc. ("Mylan"), Dooley -- a then fifty-nine-year-old label control clerk -- paid premiums for coverage under Mylan's short-term disability plan ("STD Plan"), which Matrix administered. The parties do not dispute that the STD Plan is an "employee welfare benefit plan" under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, <u>et seq.</u> ("ERISA"), specifically §§ 1002(1)(A) and 1003(a).

Under the terms of the STD Plan, a participant was "disabled" if he or she was prevented by (1) accidental bodily injury, (2)

sickness, (3) mental illness, (4) substance abuse, or (5) pregnancy from "performing the essential duties of [his or her] occupation." Administrative Record ("AR") at 426. "Mental illness" was defined as "any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations or psychological, behavioral or emotional disorder, but excluding demonstrable structural brain damage." Id. at 425.

On January 28, 2013, Dooley filed a claim with Matrix for benefits under the STD Plan. (Dkt. No. 1 at 2). Richard Cook ("Cook"), a physician's assistant specializing in psychology, provided Matrix with the requisite certification, in which he diagnosed Dooley with depressive disorder and stated that she suffered from "increased anxiety" as a result of going to work. AR at 74. Cook also assigned Dooley a score of 50 on the global

**DOOLEY v. MATRIX ABSENCE MANAGEMENT, INC.**                    **1:14CV2**

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

assessment of functioning ("GAF") scale[1] and prescribed her therapy and twenty milligrams of Lexapro daily. Id.

On February 15, 2013, Matrix's registered nurse, Vivienne Esty-Fenton ("Esty-Fenton"), reviewed Dooley's medical records and Cook's certification. In her note, she concluded:

> Based on reviewed medical records, claimant's psychiatric functional impairment of anxiety and depression cannot be supported as other than claimant and provider stating that claimant has anxiety, Generalized Anxiety Disorder per provider on 2/11/12 med cert, and a GAF score of 50, no other symptoms or observed objective information noted on review to substantiate claim. The medical opinion provided is based on the data available as of this date.

Id. at 5.

In a February 20, 2013 letter to Dooley, Matrix denied her claim for benefits under the STD Plan. Id. at 99-102. It explained its reasons as follows:

---

[1] The GAF scale "rates psychological, social, and occupational functioning." Siddiqui v. Colvin, __ F. Supp. 3d __, __, No. TMD 13-1080, 2015 WL 1393564, at *4 n.2 (D. Md. Mar. 24, 2015) (citation omitted). "A GAF of 41-50 is defined as '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" Smith v. Astrue, No. 2:11CV600, 2012 WL 3156597, at *7 n.4 (S.D.W. Va. Aug. 3, 2012) (citation omitted) (alterations in original). Notably, "[a] GAF rating between 51 and 60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers).'" Id. at *3 n.3 (citation omitted) (alterations in original).

3

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

> On February 11, 2013 we received medical certification from Richard Cook, PA-C, MPAS stating that you were disabled from October 31, 2012 until March 1, 2013. We also received a note from Mr. Cook dated January 28, 2013 stating that due to your increasing symptoms, it is recommended that you be exempt from work duties for up to and including 45 calendar days. He did not indicate what your symptoms are nor did he provide medical evidence to support why [you] are unable to perform your essential job duties.
>
> On February 12, 2013 we requested all treatment notes from Mr. Cook from January 1, 2013 to the present to further evaluate your claim. Per our conversation on February 13, 2013, you advised Mr. Cook would not submit any additional medical records. Your claim was then referred to our medical staff for review.
>
> Based on the limited medical received, the review concluded that psychiatric functional impairment of anxiety and depression cannot be supported as other than claimant and provider stating that claimant has anxiety. A GAF (global assessment functioning) score of 50 was noted which is moderate impairment, no other symptoms or observed objective information noted to substantiate the claim.
>
> Unfortunately, the medical documentation received does not provide medical evidence to support a disabling condition and your request for disability benefits has been denied effective January 28, 2013.

Id. at 99-100.

On February 28, 2013, Dooley appealed the denial of her claim, pursuant to the STD Plan's "Claim Review Procedure." Id. at 103, 377-78. Matrix obtained additional medical documentation, and this time Carolyn Clark ("Clark"), another registered nurse, performed

4

a comprehensive review of the claim and denial. As part of that review, Clark examined "psychiatry records" and "general medical records from various providers, including PCP, ophthalmology, gynecology, gastroenterology, chiropractor and Fairmont General Hospital." Id. at 6. Ultimately, Clark concluded that:

> [M]edical records show claimant with various somatic complaints consisting of stomach pain, isolated chest pain event, and throat fullness related to goiter. They required limited treatment outside of diagnostic testing and some medication prescriptions. There is no evidence of functional impairment related to any of these issues. Psychiatric records show complaints exclusively related to perceived conflict with employer. While she attended regular medication management visits, the findings and mental status exams as described do not support the presence of impairing psychiatric symptoms. There is no indication that she is impaired outside the realm of occupational functioning. Based on this information, impairment stems from perceived conflict with the employer rather than a mental-nervous condition and psychiatric disability, restrictions, or limitations is not supported.

Id. at 7.

Based on Clark's findings and her review of the medical documentation, Matrix denied Dooley's appeal. In a May 24, 2013 letter, Matrix explained to Dooley: "The medical records do not support your inability to perform the essential duties of your occupation beginning January 28, 2013. Accordingly, we are

maintaining our previous denial of benefits beginning January 28, 2013." Id. at 336.

Following that denial, Dooley filed a complaint in this Court "to recover benefits due to [her] under the terms of [her] plan," pursuant to 29 U.S.C. § 1132(a)(1)(B). Matrix seeks summary judgment on the basis that it did not abuse its discretion in denying Dooley STD benefits because it "conducted a reasonable and deliberate review of [her] claim, properly considered the evidence, and reached the correct decision." (Dkt. No. 36 at 1). Dooley's pro se response to the motion does little more than restate the allegations in her complaint. Matrix's motion is ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir.

2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. DISCUSSION

For the reasons stated in its "Order Granting Defendant's Motion to Exclude Documents Not Included in the Administrative Record" (dkt. no. 32), the Court will review Matrix's denial of

**DOOLEY v. MATRIX ABSENCE MANAGEMENT, INC.**                    **1:14CV2**

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dooley's claim for abuse of discretion.[2]  Under that standard, "we will not disturb such a decision if it is reasonable."  Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342 (4th Cir. 2000).  "In general, 'a decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'"  Hung v. Guardian Life Ins. Co., 28 Fed. App'x 268, 272 (4th Cir. 2002) (quoting Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997)).

More specifically, the "reasonableness" determination requires district courts to consider eight non-exclusive factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

---

[2] As explained in the previous order, Mylan expressly "delegate[d] to Matrix the discretionary authority to determine the validity of claims under the Plan." (Dkt. No. 29-2 at 15); see Williams v. Metro. Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010) ("When, as here, an ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion.").

Booth, 201 F.3d at 342-43. These factors "reflect a desire to ensure that plan sponsors cannot, through artful plan drafting, impinge on the proper role of courts in enforcing contracts and establishing principles of judicial review." Helton v. AT&T, Inc., 709 F.3d 343, 354 (4th Cir. 2013) (internal quotation marks and citation omitted).

### A. Plan Language

As noted, the STD Plan defined "mental illness" as "any psychological, behavioral or emotional disorder or ailment of the mind, including physical manifestations or psychological, behavioral or emotional disorder, but excluding demonstrable structural brain damage." AR at 425. Under the STD Plan, a participant becomes "disabled" from a mental illness when he or she is prevented from performing the "essential duties of [his or her] occupation." Id. at 426.

Here, Cook assigned Dooley a GAF score of 50, which, at first blush, might implicate her occupational capabilities. A GAF score, however, is not objective evidence; rather, it is "'a subjective determination that represents the clinician's judgment of the individual's overall level of functioning.'" Minish v. Astrue, No. 1:12CV01, 2013 WL 1010437, at *4 (W.D.N.C. Mar. 14, 2013) (quoting

9

White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009)). And, at least in the social security context, courts generally require "further context and additional evidence" to substantiate the rating. Kennedy-Garnett v. Colvin, No. 1:14CV198, 2015 WL 4158755, at *5 (M.D.N.C. July 9, 2015) (internal quotation marks and citation omitted).

There is also a dearth of symptomatic evidence supporting Dooley's claim. Dooley did feel uncomfortable and stressed in her work environment, but as Clark explained, any mental impairment "stems from perceived conflict with the employer rather than a mental-nervous condition and psychiatric disability." AR at 7. Furthermore, Clark noted "no evidence of functional impairment related to any of these issues." Id.

### B. Plan Purpose

The purpose of the STD Plan is to "provide[] [participants] with short term income protection if [they] become Disabled from a covered accident, sickness or pregnancy." Id. at 418. That purpose is thwarted where a participant who is not disabled receives benefits. Accordingly, consistent with the purpose of the STD Plan, Matrix denied Dooley benefits after determining that she was not disabled.

### C. Materials Considered

There is little doubt that Matrix considered ample materials and documentation in reaching its eligibility decision. The administrative record relied on by Matrix contains hundreds of pages of medical records. The initial reviewing nurse, Esty-Fenton, looked at and considered medical records from Dooley's visits with two doctors, a social worker, and a physician's assistant. Id. at 5. She also reviewed Cook's medical certification and narrative note, as well as the Family and Medical Leave Act certification submitted by Dooley on January 8, 2013. Id.

Similarly, the second reviewing nurse, Clark, considered "psychiatry records" and "general medical records from various providers, including PCP, opthamology, gynecology, gastroenterology, chiropractor, and Fairmont General Hospital." Id. at 7. Notably, Dooley provided little help in obtaining documentation, and Matrix was forced to collect certain records through its independent efforts.

Finally, the records reviewed substantially support Matrix's determination that Dooley was not prevented from performing her job duties. As Esty-Fenton stated, "claimant's psychiatric functional

**DOOLEY v. MATRIX ABSENCE MANAGEMENT, INC.**                    1:14CV2

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

impairment of anxiety and depression cannot be supported." Id. at 4. The administrative record contains nothing that suggests otherwise, and without such evidence Matrix's denial of benefits was justified.

### D. Consistency of Plan Interpretation

This factor has no relevance here, as Dooley has failed to present evidence that Matrix reached different eligibility determinations in other cases with similar records.

### E. Reasoned and Principled Decisionmaking Process

The communications from the administrative process reveal that Matrix reached its eligibility determination with due deliberation and reason. Dooley filed her claim on January 28. Matrix then assigned Esty-Fenton to review the available documentation for an initial assessment. On February 15, after considering the documentation, Esty-Fenton determined that the evidence could not sustain the conclusion that Dooley was prevented from performing her job duties.

Dooley's appeal followed, and Matrix spent several weeks gathering additional documentation. Eventually, Clark reviewed everything that was available and, like Esty-Fenton, concluded that

"psychiatric disability, restrictions, or limitations is not supported." Id. at 7.

Ten days later, Matrix sent Dooley a letter explaining its decision by: (1) providing the applicable language of the STD Plan; (2) stating the findings of its medical department; (3) citing the evidence on which the findings were based; and (4) articulating its conclusion that "[t]he medical records do not support your inability to perform the essential duties of your occupation beginning January 28, 2013." Id. at 336. This process demonstrates that Matrix's decision was reasoned and principled and cannot be considered an arbitrary abuse of discretion.

### F. Consistency With ERISA Requirements

Under 29 C.F.R. § 2560.503-1(f)(3), Matrix was required to provide notice of claim denial to Dooley within forty-five days of receiving her claim. This, of course, was satisfied when Matrix provided written notice to Dooley on February 20 after receiving her claim on January 28. Under 29 C.F.R. § 2560.503-1(g)(1), Matrix's notice of claim denial had to, and did, include the reasons for the adverse determination, reference to the pertinent plan provisions, a description of any additional material or information, and the plan's review procedures. Finally, Matrix's

appeals process and subsequent notice complied with the requirements of 29 C.F.R. §§ 2560.503-1(h)(4), (i)(3), and (j).

### G. External Standards

Dooley has not identified, and this Court cannot find, any external standards relevant to Matrix's exercise of discretion.

### H. Conflict of Interest

"[A]ny conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination." Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353, 359 (4th Cir. 2008). Even where the plan is administered by a third-party, the administrator has a conflict of interest where it "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008).

Here, Matrix has no conflict of interest because Mylan, not Matrix, is responsible for paying benefits under the STD Plan. As explained by Mylan, the STD Plan is self-funded, which, under the terms of the Administrative Services Agreement with Matrix, means that Mylan "has the sole responsibility to pay, and provide funds, for all covered Plan benefits . . . ." AR at 350. The Administrative Services Agreement further provides that "[u]nder no

circumstances shall Matrix be required to advance funds to pay for benefits administered under this Agreement." Id. at 352. For these reasons, no conflict of interest exists.

## V. CONCLUSION

After careful consideration of the relevant Booth factors, the Court concludes that Matrix did not abuse its discretion in denying Dooley's claim for benefits under the STD Plan. It therefore **GRANTS** Matrix's motion for summary judgment.

It is so **ORDERED.**

The Court directs the Clerk (1) to transmit copies of this Memorandum Opinion and Order to counsel of record and to the pro se plaintiff, certified mail, return receipt requested; (2) to enter a separate judgment order; and (3) to remove this case from the active docket.

DATED: August 4, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE